[Civ. No. 17746. First Dist., Div. Two. Aug. 7, 1958.]

PAUL ROUSE, Appellant, v. TWIN PINES SANITARIUM, INC., et al., Defendants; JAMES ALEXANDER HAMILTON et al., Respondents.

*Assigned by Chairman of Judicial Council.

Joseph A. Brown and Miguel Leite for Appellant.

Peart, Baraty & Hassard, Robert D. Huber, Bledsoe, Smith, Cathcart, Johnson & Phelps and Joseph W. Rogers for Respondents.

DOOLING, J.—Appellant brought this action in three counts: 1. for malpractice; 2. for assault and battery; and 3. for malicious prosecution. The second count has been dismissed with prejudice. Nonsuit was granted as to the first and third counts at the close of plaintiff's case. From the judgments of nonsuit appellant has appealed and argues only as against respondents Snow and Hamilton.

Appellant is a barber and respondent Snow, a physician and surgeon, had been a customer in his shop. In July of 1952 appellant suffered a broken ankle after drinking for three

days with his brother. He was taken to Park Sanitarium by Dr. Davidson (an associate of respondent Snow) and later transferred to Stanford Hospital. Dr. Sterling Bunnell put his ankle in a cast. Dr. Snow prescribed for him tuinal (sleeping tablets), paraldehyde to quiet his nerves and some codeine to relieve pain. After his discharge from the hospital appellant continued to use the two former drugs until he "passed out on the floor of the barber shop." He was readmitted to Stanford Hospital and after three or four days discharged. He continued to take the sleeping pills and paraldehyde until about the middle of January 1953. At that time he requested Dr. Snow to renew his prescription for tuinal and Snow said to him: "I gave you too much already, use bromide." ". . . He says, 'I can't give you any more sleeping pills,' he said, 'I give you too many,' and he says, 'Take a bromide.'" Appellant bought and consumed from three to five bottles of triple bromide. This can be obtained without a prescription and there are directions on the bottle as to the proper dosage. Appellant did not see Dr. Snow again until after he was released from Agnews State Hospital.

About February 6, 1953, appellant felt a pain in his head. He finished the bottle of bromide which he had and took a sleeping pill. After that he "passed out." On February 7 Dr. Snow was called to appellant's barber shop. He felt that he was mentally incompetent and should be admitted to a psychiatric institution. Appellant was taken to Twin Pines Sanitarium where he was attended by respondent Dr. Hamilton. He had 246 mg. percent of bromide in his blood which according to Dr. Hamilton "is a tremendous blood bromide. This is the largest that I have ever seen in any patient . . . It is close to what I ordinarily regarded as a lethal dose . . ."

After a week's stay at this sanitarium appellant was not improving and was moving from a confused delirious state to a state in which clear and fixed psychotic symptoms were present. Dr. Hamilton decided that appellant should be committed to a state mental hospital where he could get shock treatments, which he believed he should have. Dr. Hamilton signed a complaint for his commitment and appellant was committed to Agnews State Hospital by a superior judge of San Mateo County. After about four weeks in Agnews he was released.

We have omitted any discussion of brutal treatment by

sanitarium attendants testified to by appellant since the count for assault and battery is not before us.

Upon the motion for nonsuit in malpractice cases the ordinary rules apply. The evidence must be construed most strongly in favor of plaintiff and every reasonable inference from the evidence drawn in his favor. (*Lashley* v. *Koerber*, 26 Cal.2d 83 [156 P.2d 441].)

The first count charged that "defendants . . . so negligently and carelessly prescribed for and treated plaintiff by administering to plaintiff divers bromides and other dangerous and deleterious drugs . . . in dangerous and detrimental quantities . . . that plaintiff . . . was caused to and did contract severe bromide poisoning and was rendered ill and nervous and was caused to and did suffer great physical and mental pain . . ."

There is no evidence that respondent Hamilton ever saw, let alone treated, appellant until after he was admitted to Twin Pines Sanitarium suffering from an excess of bromide in his blood and no evidence from which a jury could find that he gave him an overdose of any drug thereafter.

As to respondent Snow insofar as bromide poisoning is concerned there is no evidence other than that Dr. Snow told appellant to "take bromide" or "take a bromide." The evidence shows that the bromide which appellant secured could be purchased from any drug store without prescription and that the proper dosage was printed on the label of the bottle. There is no evidence that bromide taken in accordance with these directions would normally have the effects which followed in this case or that a physician following the usual and customary practice in the community would be negligent in prescribing "bromide" or "a bromide" for this appellant. This is not one of those cases in which we, or a jury, could from common knowledge say that the respondent Snow was guilty of negligence in suggesting that appellant take bromide.

Dr. Snow did testify that after his release from the hospital the second time he thought that he had given appellant too much tuinal, but there is no evidence that this drug contained bromide or did or could have contributed to the excess of bromide in appellant's blood or caused any of the illness or ill effects from which he afterwards suffered.

On the count for malicious prosecution, appellant cites *Kellogg* v. *Cochran*, 87 Cal. 192 [25 P. 677, 12 L.R.A. 104], in support of his argument that the commitment order of the superior court is not a bar to the action for malicious

prosecution. The later cases of *Fetterley* v. *Gibson*, 210 Cal. 282 [291 P. 411], and *Schwartz* v. *Schwartz*, 25 Cal.App.2d 303 [77 P.2d 260], squarely decided that the court's order of commitment is a bar to such an action and in the latter case one of appellant's counsel in this case made the same argument and cited *Kellogg* v. *Cochran*, *supra*, to no avail. (See *Schwartz* v. *Schwartz*, *supra*, 25 Cal.App.2d p. 304.)

▇ In any event "probable cause has been in substance defined as such a state of facts as would lead a reasonably prudent man to believe that the plaintiff was insane." (*Brock* v. *Southern Pac. Co.*, 86 Cal.App.2d 182, 196 [195 P.2d 66].)

▇ The evidence shows that appellant was suffering from delusions that people were shooting at him and that he was being given poison and the records of Agnews State Hospital show that appellant was suffering from the same sort of delusions five days after being admitted there. On this uncontradicted evidence the facts were clearly sufficient to constitute probable cause for seeking appellant's commitment.

Judgment affirmed.

Kaufman, P. J., concurred.

A petition for a rehearing was denied September 5, 1958, and appellant's petition for a hearing by the Supreme Court was denied October 1, 1958. Carter, J., was of the opinion that the petition should be granted.