[Civ. No. 7699. Fourth Dist., Div. One. Apr. 18, 1966.]

ASSOCIATES DISCOUNT CORPORATION, Plaintiff and Respondent, v. TOBB COMPANY, INC., Defendant and Appellant.

544

David H. R. Pain for Defendant and Appellant.

Smith, Prante & Biggins and Todd Smith for Plaintiff and Respondent.

COUGHLIN, J.—Plaintiff Associates Discount Corporation, as assignee of the lessor of a lease of personal property, recovered judgment against the defendant Tobb Co., Inc., as lessee, for the balance of rental unpaid thereunder. Defendant appeals.

The lease was evidenced by a written instrument dated December 20, 1960, between Capital Resources, Inc., an equipment leasing corporation, as lessor, and Tobb Co., Inc., the defendant, as lessee; was executed on behalf of the latter by Winton B. Oster, as president, and Roy F. Berrett, as secretary; incorporated an attached ''Schedule,'' also executed on behalf of defendant by Oster, as president, and Berrett as secretary, and bearing the corporate seal, which provided, among other things, that the lessee should pay lessor the sum of $1,250 per month rental for 60 months; and was assigned by Capital Resources to plaintiff, Associates Discount Cor-

poration, a commercial financing firm engaged in the business of obtaining leases at a discount.

Accompanying the lease and attached "Schedule" was a document entitled "Certified Copy of Resolution and Designation of Agents" executed by Berrett as secretary of defendant corporation and bearing its seal. It certified that the board of directors of defendant had adopted a resolution authorizing any officer of the corporation, among other things, "to execute, acknowledge and deliver and/or appoint another to execute, acknowledge, and deliver on behalf of this Corporation and in its name, any and all notes, drafts, assignments, repurchase agreements, bills of sale, chattel mortgages, conditional sales contracts, trust receipts and any and all other instruments which he may deem necessary or convenient in the transaction of business of the undersigned. . . ."

Defendant was a corporation formed by four medical doctors, viz., Oster, Berrett, Bowers and Thayer, each of whom was a director and shareholder, and owned 25 percent of its shares. Originally defendant was the owner of the equipment covered by the lease. Oster and Berrett, doing business as Ocean Beach Medical Group, leased the equipment from defendant and paid it $1,800 per month as rental. Early in December 1960, as a result of negotiations between Oster, purportedly on behalf of defendant, a man named Morrison, representing H & M Management Company, Capital Resources and the plaintiff, defendant sold the equipment to H & M Management Company for $50,000 which, in turn, sold it to Capital Resources for the same amount; the latter leased it back to defendant under the subject lease and assigned the same, together with its interest in the equipment, to plaintiff for $50,000; in the course of the transaction plaintiff paid $50,000 to Capital Resources, which paid the same amount to "H & M Management Corporation and Winton B. Oster, M.D." by a check reciting, "Acceptance of this check shall constitute full payment to H & M Management Corp. for equipment sold to Capital Resources, Inc., as specified in an inventory list captioned Exhibit 'A' attached to a lease agreement between Capital Resources, Inc., and Tobb Corporation."

Two letters to "H & M Management Co.," each dated December 1, 1960, signed by Oster for defendant as president and bearing its corporate seal, respectively demanded payment of $50,000 for the purchase of the equipment and acknowledged receipt of payment in full therefor.

The lease provided for a security deposit of $6,250 which was paid by Oster to Capital Resources and retained by the latter. Following its execution Oster paid plaintiff monthly rental installments totaling $17,500. The lease provided in the event of default in payment of any installment the lessor might declare the entire rent provided for thereunder immediately due and payable. Under date of February 9, 1962, demand in writing was made upon defendant for payment of three delinquent rental installments. Upon continued failure to pay such, all the remaining rental installments were declared due and payable. Suit to recover this amount was filed. Plaintiffs in the action were Associates Discount Co., Inc., Capital Resources and a copartnership known as Thornally-Bird Industries. Defendant contested liability on the ground the lease had been executed without its authority; was in violation of designated statutory provisions; constituted a usurious loan; and lacked consideration. The court found, among other things, the lease was valid; was not a loan; Capital Resources owned the equipment at the time the lease was executed, having acquired title from H & M Management Co., which in turn had acquired title from defendant; Oster and Berrett, as president and secretary respectively of defendant, had authority to transfer the equipment to H & M Management Co.; Capital Resources entered into the lease with defendant; Oster and Berrett had authority to enter into the lease; pursuant to the terms of the lease, by virtue of the accelerated payment of the agreed rental installments, there was unpaid $51,250; that, contrary to defendant's contentions, the transfer of the equipment did not constitute a sale of substantially all of defendant's assets subject to the regulation prescribed by section 3901 of the Corporations Code; and that Capital Resources assigned its interest in the equipment and the lease to plaintiff Associates Discount Corporation. Judgment was entered in favor of this plaintiff alone and against defendant for the amount unpaid under the lease and an additional sum of $5,500 as attorney's fees.

On appeal defendant attacks the foregoing findings as not supported by the evidence; attacks other findings for the same reason; and contends the court erred in the rejection of testimony.

As the finding that Oster and Berrett had authority to transfer the equipment to H & M Management Company and to execute the lease is supported by the evidence, any deficiency respecting other findings sustaining the transaction on other grounds need not be considered. It is a settled

rule that if there is one or more sustained findings upon which the judgment may rest, it will be concluded on appeal the trial court did rest its judgment upon that finding or those findings and other findings may be disregarded. (*Brewer* v. *Simpson,* 53 Cal.2d 567, 584 [2 Cal.Rptr. 609, 349 P.2d 289].)

The finding that Oster and Berrett had authority to execute the lease is supported by the fact that it purports to be executed by them on behalf of the corporation and the "Schedule" as a part thereof likewise purports to be executed by them for the corporation and bears its seal; the further fact that a certified copy of a resolution authorizing any officer of the corporation to execute "any and all other instruments which he may deem necessary or convenient in the transaction of business" of the corporation was certified to be correct by Berrett as secretary of the corporation under the seal of said corporation; and circumstances justifying an inference that such authority had been given.

Defendant's by-laws provided its president and secretary should execute, in its name, "all deeds, bonds, contracts, and other obligations and instruments authorized by the Board of Directors to be executed." ██ An instrument signed by officers of a corporation, purportedly on its behalf, and bearing its seal, is prima facie evidence that the officers signing such executed the same under authority duly given them by the board of directors. (Corp. Code, § 833; *Thomas V. Peterson,* 213 Cal. 672, 674 [3 P.2d 306]; *Potts Drug Co.* v. *Benedict,* 156 Cal. 322, 327 [104 P. 432, 25 L.R.A. N.S. 609]; *Andres* v. *Fry,* 113 Cal. 124, 127 [45 P. 534]; *Sime* v. *Malouf,* 95 Cal.App.2d 82, 93-94 [212 P.2d 946, 213 P.2d 788]; *Solorza* v. *Park Water Co.,* 86 Cal.App.2d 653, 659-661 [195 P.2d 523].) ██ Likewise, a certification by the secretary of a corporation, bearing its corporate seal, that the board of directors adopted a resolution authorizing the execution of the instrument by designated officers is evidence of the authority of those officers to execute that instrument. (*Purser* v. *Eagle Lake Land & Irr. Co.,* 111 Cal. 139, 141-142 [43 P. 523].)

██ The act of a secretary in so certifying the adoption of the resolution by the corporation is within his authority and binding upon it even though the resolution was spurious. (*Condor Corp.* v. *Cunningham,* 71 Cal.App.2d 25, 33 [162 P.2d 21].) ██ The effect of an instrument executed by its officers on its behalf, bearing its corporate seal, and accompanied by a certification by its secretary under the corporate seal that a resolution authorizing execution of the instrument

by those officers had been adopted by the board of directors creates a disputable presumption that the instrument is the act of the corporation. (*Purser* v. *Eagle Lake Land & Irr. Co., supra,* 111 Cal. 139, 141-142; *Miners' Ditch Co.* v. *Zellerbach,* 37 Cal. 543, 597-599; *Sime* v. *Malouf, supra,* 95 Cal.App.2d 82, 93-94; *Solorza* v. *Park Water Co., supra,* 86 Cal.App.2d 653, 659-661.) To rebut this presumption defendant relies upon the testimony of its directors that execution of the lease was not authorized, and upon the absence of any record of the adoption of the subject resolution in the minutes of the corporation. However, there was evidence establishing it had made two previous loans from a bank and supplied the latter with copies of resolutions authorizing such which did not appear in its minutes. ▮ In addition, there is evidence inferentially supporting the conclusion that the fact of execution of the lease had been brought to the attention of each of the directors within a month thereafter and no action was taken to disaffirm it which, in turn, supports the conclusion its execution had been authorized.

▮ The finding that defendant transferred the equipment to H & M Management Company which in turn transferred it to Capital Resources is supported by the recital in the lease that, "The equipment is and shall at all times be and remain, the sole and exclusive property of lessor." In addition, the documents respectively demanding payment from H & M Management Company for the purchase of the equipment and acknowledging receipt of full payment therefor, executed by Oster as president on behalf of defendant to which its corporate seal was attached, under the rules heretofore noted, support the conclusion that defendant transferred the equipment to H & M Management Company. Furthermore, defendant's corporate minutes contain a resolution adopted by its board of directors on March 6, 1962, that the company sell the equipment in question to Ocean Beach Medical Group, i.e., Oster and Berrett "effective December 1, 1960."

▮ Defendant contends the court erred in admitting, over objection, the foregoing letter from Oster, as president of defendant, to H & M Management Company requesting remission of $50,000 for the purchase of the equipment. The basis for this contention is that the letter was not admissible to establish Oster's authority. However, it was not admitted for this purpose. The letter purports to be executed by defendant, acting through Oster as president, and bears its corporate seal. Under the rule heretofore noted, prima facie it is the act of the corporation; is a demand for the purchase price of equipment;

and was relevant to establish a circumstance from which the court was entitled to conclude a sale had taken place.

Defendant's attack upon the validity of the transfer to H & M Management Company because of an alleged noncompliance with the requirements of section 3901 of the Corporations Code lacks merit for several reasons. The requirements in question are imposed only on a sale by a corporation which would "dispose of all or substantially all of its property and assets. . . ." (Corp. Code, § 3901.) The court found the sale here did not dispose of all or substantially all of the defendant's property and assets. This finding is adequately supported by the evidence, defendant's contention to the contrary notwithstanding. Furthermore, the corporation, as distinguished from its stockholders or creditors, may not rely upon a failure to comply with the requirements in question to invalidate such a sale. (*Solorza* v. *Park Water Co., supra*, 86 Cal.App.2d 653, 659.) In addition, as noted, all of defendant's stockholders and directors approved a sale of the subject equipment to Ocean Beach Medical Group, of which Oster was a member, the same to be effective as of December 1, 1960. Under these circumstances, reliance upon an alleged failure to comply with section 3901 may not be urged as a defense to invalidate the subject transfer. (See *McDermott* v. *Bear Film Co.*, 219 Cal.App.2d 607, 612 [33 Cal.Rptr. 486].)

The findings that the lease sued upon actually was such and not a pledge or mortgage, and that the transaction in question was not a loan subject to the usury laws, are supported by substantial evidence. Defendant's contention to the contrary argues the weight rather than the sufficiency of the evidence and is without merit. (See *Thomas* v. *Hunt Mfg. Corp.*, 42 Cal.2d 734, 736 [269 P.2d 12] ; *Cottle* v. *Gibbon,* 200 Cal.App. 2d 1, 4 [19 Cal.Rptr. 82].)

The finding of fact and conclusion of law on the issue of damages, awarding plaintiff the accelerated unpaid rental installments, is supported by the evidence and the law in the premises. Upon default in the payment of rent under a lease providing for payment of rental in installments, the lessor may rest upon his lease and sue the lessee to recover each installment, or the whole thereof, when it becomes due. (*Bradbury* v. *Higginson,* 162 Cal. 602, 604 [123 P. 797] ; *Salvation Army* v. *Daily Telegram,* 125 Cal.App. 743, 745 [14 P.2d 123].) Defendant's contentions that the court applied the wrong measure of damages, and that awarding the unpaid balance due under the lease constituted an award of liquidated

damages, are without merit. Plaintiff rested upon the lease. The remaining installments payable thereunder became due upon acceleration. Thus, the total unpaid stipulated rent was due at that time. Defendant remained in possession of the equipment. No contention is made to the contrary. No liquidated damage issue was involved.

Defendant's assertion of error in the rejection of evidence concerns (1) an order denying its offer to introduce questions and answers submitted to and obtained from Oster pursuant to the provisions of section 2030 of the Code of Civil Procedure; (2) an order striking an answer to a question tending to prove that Capital Resources knew the money paid by it for purchase of the equipment was to be used by Oster personally and not by defendant; and (3) an order sustaining objections to allegedly material questions asked of Dr. Bowers.

Defendant directed interrogatories to Oster pursuant to the provisions of Code of Civil Procedure section 2030;[1] served a copy thereof upon plaintiff; received answers thereto; served a copy thereof upon plaintiff; and offered the questions and answers in evidence. Dr. Oster had died in the meantime. Plaintiff's objection thereto was sustained. The issue for determination is whether, under section 2030, interrogatories by one party to an action directed to an adverse party and answers of the latter thereto are admissible in evidence against a third party. In support of its affirmative position on this issue, defendant directs attention to the provision of section 2030 that such interrogatories and answers "may be used to the same extent as provided in subdivision (d) of Section 2016 of this code for the use of the deposition of a party"; to the provisions of the latter section which, at the time of trial,[2] declared a deposition "may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any one of the following provisions: . . . (2) The deposition of a party to the record of any civil action or proceeding . . . may be used by an adverse party for any purpose. (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (i) that the witness is dead"; to the fact that Oster was an adverse party and is dead; and to the further fact that plaintiff was given copies of the interrogatories and answers. ▮▮▮ Plaintiff contends the interro-

---

[1]At this time Oster was a defendant under plaintiff's complaint and a cross-defendant under a cross-complaint by Tobb Company, Inc., et al.

[2]See Stats. of 1963, ch. 1744, pp. 3477-3479.

gatories and answers thereto may be used in lieu of a deposition only upon adherence to the provisions of Code of Civil Procedure, section 2020. The latter code section provides for the taking of the ''deposition of any person upon written interrogatories''; directs the service of copies of all such interrogatories upon all parties; authorizes the latter to serve cross-interrogatories; permits re-direct and recross-interrogatories by the respective parties; and provides for an order, upon good cause shown, that the deposition ''shall not be taken except by allowing oral examination by one or more parties.'' These requirements and procedures are not prescribed by section 2030, the principal objective of which is to provide a discovery procedure directed to an adverse party and, incidentally, to authorize the use of his answers in lieu of testimony obtained by deposition. Whether that section authorizes the use of such answers against a third party must be determined in light of all sections of the code upon the general subject. (*Select Base Materials, Inc.* v. *Board of Equalization,* 51 Cal.2d 640, 645 [335 P.2d 672].) Sections 2030 and 2016 were added to the code in 1957. As originally adopted section 2030 did not contain the present provisions requiring service upon a third party of copies of the interrogatories propounded and of the answers received in the proceeding initiated under that section. As a consequence, these interrogatories and answers could not be used in lieu of a deposition pursuant to the privilege granted by section 2016 because such use was authorized only ''against any party who was present or represented at the taking of the deposition or had due notice thereof.'' In 1963 an amendment to section 2030 provided that, ''*Solely for their information,* copies of all interrogatories and of all answers thereto shall be served upon all other parties. . . .'' (Italics ours.) The indicated intent of this provision is to limit the purpose of the requirement respecting service of copies; to make it clear that the receipt of such did not impose an obligation upon or permit the ''other parties'' to participate in the proceeding; to eliminate any basis for a claim that the receipt of notice of the proceeding through receipt of copies of the questions propounded and answers received authorized their use against the ''other parties''; and, thus, to retain the previously existing status of the law respecting their use in lieu of a deposition. (See 37 State Bar J. 586; 38 State Bar J. 683.)

It would be unreasonable and absurd to permit questions and answers respectively propounded and received in an inter-

rogatory proceeding between two parties to be used against a third party when the latter is not given the right to propound cross-interrogatories or to exercise the privilege conferred upon the party initiating the proceeding by section 2030 to require the adverse party to whom the interrogatories are directed to make a further response. Equally unreasonable and absurd would be a system for the preservation of the testimony of witnesses generally which permits such by an interrogatory procedure in lieu of depositions where the right to cross-interrogate or to examine orally is conferred upon all parties, but permits an alternate interrogatory procedure to be invoked by one of the parties when the witness is an adverse party under which the right to cross-interrogate or to examine orally is not extended to other parties.

■ Where the construction of a statute is necessary, it should be interpreted so as to produce a result that is reasonable (*Metropolitan Water Dist.* v. *Adams,* 32 Cal.2d 620, 630 [197 P.2d 543]; consideration should be given to the consequences that will flow from a particular interpretation (*Estate of Ryan,* 21 Cal.2d 498, 513 [133 P.2d 626]; *Jaynes* v. *Stockton,* 193 Cal.App.2d 47, 56 [14 Cal.Rptr. 49]); a construction " 'which is consistent with sound sense and wise policy, with a view to promoting justice' " should be accepted (*Estate of Todd,* 17 Cal.2d 270, 275 [109 P.2d 913]); that which would produce an absurdity should be rejected (*Stockton School Dist.* v. *Wright,* 134 Cal. 64, 68 [66 P. 34]); the consideration given to phraseology should be limited to the end that the purpose of the statute will not be sacrificed to a literal construction of any part thereof (*Select Base Materials* v. *Board of Equalization, supra,* 51 Cal.2d 640, 645; *San Bernardino Fire & Police Protective League* v. *City of San Bernardino,* 199 Cal.App.2d 401, 410-414 [18 Cal.Rptr. 757]); and, instead, that interpretation which will effect such purpose should be adopted. (*Select Base Materials* v. *Board of Equalization, supra,* 51 Cal.2d 640, 645; *Dickey* v. *Raisin Proration Zone No. 1,* 24 Cal.2d 796, 802 [151 P.2d 505, 157 A.L.R. 324].) ■ Applying these rules of interpretation to the code sections under consideration here dictates the conclusion that questions and answers produced under the interrogatory procedure authorized by section 2030 may not be used in lieu of a deposition as against a third party to the action.

■ Defendant, through counsel, asked Dr. Bowers, as a witness, a series of questions to which objections were sustained. The alleged purpose thereof was to elicit testimony that Oster had not been permitted to act without board

approval. The position of the court in sustaining the objections appears from its statement that there was no showing Oster had been authorized to act without board approval; that the questions were directed to testimony in rebuttal of a fact about which plaintiff had offered no proof. No error occurred.

During the examination of Edward Brown, president of Capital Resources, by defendant, the court, on its own motion, ordered an answer of the witness stricken. Defendant contends this was error. The incident occurred after counsel for defendant read to the witness, by way of impeachment, a question and answer from his deposition; was asked by the witness to read other questions and answers by way of explanation; hesitated doing so; instead, asked the question to which the witness gave the answer that was stricken, which was followed by an ejaculation by the attorney for plaintiff: "Just a minute. Just a minute" and the court's order striking the answer; subsequently read the requested questions and answers from the deposition; did not renew the question which theretofore elicited the answer that was stricken; or did not move that the answer be reinstated. ▋ A fair consideration of the record dictates the conclusion the stricken answer had been given before the attorney for plaintiff had an opportunity to make an objection, and the order of the court striking such was to afford that opportunity, following which the court and counsel engaged in a discussion respecting the reading of requested additional questions and answers. To assert exclusion of the answer as error on appeal, defendant should have repeated the question, asked that the answer be reinstated, or otherwise obtained a ruling from the court respecting the reason for its exclusion. (Generally see *People* v. *Corrigan,* 48 Cal.2d 551, 556 [310 P.2d 953] ; *People* v. *Pacheco,* 220 Cal.App.2d 320, 326 [33 Cal.Rptr. 735] ; *Drullinger* v. *Erskine,* 71 Cal.App.2d 492, 500 [163 P.2d 48] ; *People* v. *Ingersoll,* 21 Cal.App. 763 [132 P. 1052].)

Included in the judgment is an award for $5,500 attorney's fees. The lease obligated the lessee to pay "all costs and expenses, including attorneys' fees, incurred by lessor" in enforcing any of its terms. The court found that plaintiff, Associates Discount Corporation, "incurred reasonable attorney's fees of $5,500 in the prosecution of this action." Defendant claims there is no evidence to support this finding. ▋ Employment by plaintiff of attorneys representing it in the prosecution of this action was inferable from the fact of such representation. In the absence of evidence showing

the terms of this employment, and there was none here, the court was entitled to infer an agreement by plaintiff to pay a reasonable attorneys' fee for the services rendered. Based on the showing respecting the extent and nature of the services rendered by plaintiff's attorneys in the case, as reflected in the record and proceedings before it, the trial court was authorized to determine the reasonable value of those services without the aid of expert evidence on the subject (*Hedden* v. *Waldeck,* 9 Cal.2d 631, 639 [72 P.2d 114]; *Kirk* v. *Culley,* 202 Cal. 501, 508 [261 P. 994]), and to conclude that the expense incurred by plaintiff for attorneys' fees to time of entry of judgment was $5,500.

Defendant advances a number of other grounds for reversal and the parties have presented their contentions pro and con respecting such. The issues thus raised are not determinative of the appeal in that they involve the sufficiency of the evidence to support findings not requisite to an affirmance of the judgment, e.g., that Oster was general manager of the defendant corporation, and plaintiff was negligent in dealing with him.

The judgment is affirmed.

Brown (Gerald), P. J., and Whelan, J., concurred.