[Civ. No. 12816. Third Dist. Feb. 2, 1972.]

JOHN KEEN, Plaintiff and Appellant, v.
G. A. PRISINZANO et al., Defendants and Respondents.

**COUNSEL**

James J. Duryea and Bruce S. Osterman for Plaintiff and Appellant.

Horvitz & Minikes, Ellis J. Horvitz, Morton Minikes, Rust & Mills, Hassard, Bonnington, Rogers & Huber, Robert D. Huber, Wilke, Fleury, Sapunor & Hoffelt, Joe S. Gray and Richard G. Logan for Defendants and Respondents.

## OPINION

JANES, J.—Plaintiff appeals from judgments of nonsuit in favor of both defendant physicians (Prisinzano and Edgar) in a malpractice action in which the complaint charged each defendant with negligent diagnosis and care (first cause), negligent advice (third cause), and negligent nondisclosure (second and fourth causes).

Relatively slight argument is devoted by plaintiff to the second, third, and fourth causes of action. We have concluded from a review of the record that the judgments were so plainly correct as to those three causes that no further discussion of them herein is warranted.

Plaintiff's main contention is that, as to both defendants, nonsuit on the first cause of action was improper. With the latter contention, we agree. ■ "Upon the motion for nonsuit in malpractice cases the ordinary rules apply. The evidence must be construed most strongly in favor of plaintiff and every reasonable inference from the evidence drawn in his favor." (*Rouse* v. *Twin Pines Sanitarium, Inc.* (1958) 162 Cal.App.2d 639, 642 [328 P.2d 536].) Viewing the record in the light of those rules, we hereunder summarize only so much of it as is needed to show that, during plaintiff's case,[1] substantial evidence was introduced which tended to prove the averments of the first cause of action. (See generally, *Guillory* v. *American President Lines* (1964) 230 Cal.App.2d 296, 301-303 [40 Cal.Rptr. 796].)

On August 23, 1966, plaintiff fell and suffered a fracture of the right os calcis (heel bone) with involvement of the subtalar joint (the joint separating the heel bone from the bone immediately above it). He was treated that day by defendant Prisinzano, who had X-rays taken. Dr. Prisinzano erroneously interpreted the X-rays as showing merely a simple fracture of plaintiff's heel bone with *no* involvement of the subtalar joint. Prisinzano thereupon applied a cast from mid-calf to toes; a few days later, he attached a steel support outside the cast to facilitate walking.

---

[1]The action was tried before a jury. Defendants' motions for nonsuit were made when plaintiff rested. The court reserved its ruling and permitted defendant Prisinzano to call his first witness, Dr. Horn. Before plaintiff's counsel had finished cross-examining Dr. Horn, the court granted the motions. The appellate briefs of both defendants refer to Dr. Horn's testimony; and, during oral argument, Dr. Prisinzano's attorney urged this court to consider Horn's testimony on the issue of proximate cause. We decline to consider it for any purpose. The only evidence relevant to the motions was the evidence introduced during plaintiff's case. (*Revels* v. *Southern Cal. Edison Co.* (1952) 113 Cal.App.2d 673, 680 [248 P.2d 986]; see *Howard* v. *General Petroleum Corp.* (1951) 108 Cal.App.2d 25, 30 [238 P.2d 145].)

Plaintiff subsequently did not return to Dr. Prisinzano. Instead, on his own initiative, plaintiff sought the services of defendant Edgar. From X-rays taken for Dr. Edgar on September 13, 1966, Edgar rightly concluded that the subtalar joint was involved, as well as the heel bone. Edgar left Prisinzano's cast on plaintiff until October 10, 1966, when Edgar removed it. X-rays taken three days later showed that, after removal of the cast, there occurred a marked increase in the signs of joint involvement.

When the cast was taken off, Dr. Edgar instructed plaintiff to start bearing weight on his right foot, using crutches. Plaintiff did so during the ensuing weeks, but the pain was intense, and his heel and ankle swelled to the size of a small grapefruit. Consequently, on November 16, 1966, plaintiff consulted with an orthopedic surgeon, Dr. Horn. Two subsequent operations by Dr. Horn alleviated plaintiff's disabilities, although he had some residual ones at the time of trial.

Both defendants practiced medicine in Sacramento County.

"The law demands only that a physician or surgeon have the degree of learning and skill ordinarily possessed by practitioners of the medical profession in the same locality and that he exercise ordinary care in applying such learning and skill to the treatment of his patient. [Citations.] The same degree of responsibility is imposed in the making of a diagnosis as in the prescribing and administering of treatment. [Citations.]" (*Lawless* v. *Calaway* (1944) 24 Cal.2d 81, 86 [147 P.2d 604].) "The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony [citations], unless the conduct required by the particular circumstances is within the common knowledge of the layman. [Citation.]" (*Sinz* v. *Owens* (1949) 33 Cal.2d 749, 753 [205 P.2d 3, 8 A.L.R.2d 757].)

"Furthermore, to recover in a malpractice case it is necessary to prove that an alleged failure to exercise the care and skill required under the circumstances was a proximate cause of the condition about which complaint is made." (*Marvin* v. *Talbott* (1963) 216 Cal.App.2d 383, 385-386 [30 Cal.Rptr. 893, 5 A.L.R.3d 908].) "In the absence of a showing that such result was a matter of common knowledge expert testimony [is] required." (*Deckard* v. *Sorenson* (1960) 177 Cal.App.2d 305, 308 [2 Cal.Rptr. 121]; see also, 1 Louisell & Williams, Medical Malpractice (1970), § 11.20, pp. 324-327.)

"The expert testimony which establishes plaintiff's prima facie case in a malpractice action may be that of defendant." (*Lashley* v. *Koerber*

280 Cal.2d 83, 89 [156 P.2d 441]; see, *McCurdy* v. *Hatfield* (1947) 30 Cal.2d 492, 495 [183 P.2d 269] (testimony under former Code Civ. Proc., § 2055, now Evid. Code, § 776):.)

In the case at bench, plaintiff does not contend that the applicable standard of care could be determined by resort to common knowledge, or that such knowledge could resolve the issue of proximate cause. ▮▮▮ Even where expert testimony is required, however, it may be circumstantial in nature, and the jury is entitled to draw reasonable inferences from it in finding the standard of care (*McCurdy* v. *Hatfield, supra,* 30 Cal.2d at p. 495; *Lashley* v. *Koerber, supra,* 26 Cal.2d at pp. 89-92; *Sheffield* v. *Runner* (1958) 163 Cal.App.2d 48, 51-52 [328 P.2d 828]; *Wickoff* v. *James* (1958) 159 Cal.App.2d 664, 668-669 [324 P.2d 661]; *Green* v. *Hale* (5th Cir. 1970) 433 F.2d 324, 331; *Anderson* v. *Martzke* (Ill.App. 1970) 266 N.E.2d 137, 139) and in determining proximate cause (*Champion* v. *Bennetts* (1951) 37 Cal.2d 815, 820-821 [236 P.2d 155]; *McBride* v. *Saylin* (1936) 6 Cal.2d 134, 137-139 [56 P.2d 941]; *Sheffield* v. *Runner, supra,* at pp. 52-53; *Ramberg* v. *Morgan* (1928) 209 Iowa 474, 481-487 [218 N.W. 492, 496-498]; *Johnson* v. *Vaughn* (Ky. 1963) 370 S.W.2d 591, 597; *Rogers* v. *Kee* (1912) 171 Mich. 551, 557-563 [137 N.W. 260, 263-365]; *Kappel* v. *Slickman* (Mo. 1966) 401 S.W.2d 451, 453).

▮▮▮ Plaintiff called defendant Edgar as a witness under Evidence Code section 776. Dr. Edgar testified that one of Dr. Prisinzano's X-rays of August 23, 1966, would "have to" be interpreted as showing subtalar joint involvement; that he (Edgar) had the ability of a general practitioner in the Sacramento community in interpreting an X-ray; and that a general practitioner conforming to the standards of practice in the Sacramento community should have been able to look at the Prisinzano X-ray and conclude from it that the subtalar joint was involved.

Plaintiff also called defendant Prisinzano as a witness under section 776. Dr. Prisinzano testified that, where a fracture of the os calcis involves the subtalar joint, "[y]ou would have pinching of the bone against the fibula, causing some narrowing of the tunnel through which the peroneal tendon comes through"; that this could eventually require surgery to relieve the pressure on the peroneal tendon; and that one of the operations performed on plaintiff by Dr. Horn was to relieve such pressure.[2] Without limitation

---

[2]Prisinzano's above testimony about the purpose of Dr. Horn's surgery came into evidence without objection or limitation as to purpose. *Subsequently,* plaintiff's counsel asked Prisinzano what Prisinzano had observed in Horn's records; Prisinzano's attorney objected; and the court ruled that Horn's records could be referred to not for the truth of the matters therein asserted but only to show the information which Prisinzano had at trial.

as to purpose, plaintiff's attorney read into evidence a portion of Dr. Prisinzano's deposition.[3] In his deposition Dr. Prisinzano stated that, if the fracture of plaintiff's os calcis distorted the subtalar joint, it would have required care and treatment different than what he (Prisinzano) had prescribed; that one of such other treatments was pinning; and that an alternative method was open reduction. Prisinzano further testified at trial that, if he had known that plaintiff's subtalar joint was distorted, he (Prisinzano) would have used the pinning method. Plaintiff's counsel asked Prisinzano the following question: "Now, Doctor, the reason that you would have done the pinning is that because your learning has told you if you use the pinning process, *the probability of not having the residual effects that this man presently has were greater;* isn't that true?" (Italics added.) Dr. Prisinzano testified in reply, "Well, to a certain extent it is. That was our teaching."

According to Dr. Edgar's later testimony, it would have been physically harmful to plaintiff if Edgar had changed the course of treatment initiated by Prisinzano. In that respect Edgar said, "If you see it initially, and then make the decision you are going to treat with surgery, that is the time to do it. So that once you have lost that chance to operate, you'd better just wait and treat it conservatively by cast, and so forth, and you may get a good result, even though it is not anatomical."

The jury could reasonably have concluded from the foregoing evidence that defendant Prisinzano was negligent when he misinterpreted the X-ray of August 23, 1966; that if he had read that X-ray correctly and had diagnosed involvement of the subtalar joint, he would have treated by pinning instead of casting; that pinning would probably have left plaintiff with less residual disability; and that Dr. Prisinzano's negligent reading of the X-ray was, therefore, a proximate cause of such disability.

As against defendant Edgar, substantial evidence tending to support the first cause of action is found in the testimony of Dr. Prisinzano. At trial, Prisinzano testified that the standard of care for a general practitioner in the Sacramento community required that such practitioner be able

---

[3] "Pursuant to Code of Civil Procedure section 2016, subdivision (d) (2), a deposition may be used for evidentiary purposes, and when it is the deposition of an adverse party it may be used for any purpose, that is, both as *substantive evidence* as well as to contradict or impeach the witness." (*Alvarez* v. *Felker Mfg. Co.* (1964) 230 Cal.App.2d 987, 1002 [41 Cal.Rptr. 514] (deposition read at trial).) (Italics added.) "There is no limitation. Consequently, it [the adverse party's deposition] may be used to establish any material fact, a prima facie case, or even to prove the whole case." (*Murry* v. *Manley* (1959) 170 Cal.App.2d 364, 367 [338 P.2d 976]; see also, *Mayhood* v. *La Rosa* (1962) 58 Cal.2d 498, 500-501 [24 Cal.Rptr. 837, 374 P.2d 805]; *Robinson* v. *North American Life & Cas. Co.* (1963) 215 Cal.App.2d 111, 115 [30 Cal.Rptr. 57] (deposition read at trial).)

to determine when, without injury to the patient, the cast should be removed from a fractured os calcis and the patient be permitted to walk without it.

Under examination by plaintiff's attorney, Prisinzano also testified that, before his pretrial deposition, he had read Dr. Horn's records and Dr. Edgar's records concerning plaintiff. Over Dr. Edgar's objection, the court allowed plaintiff's counsel to read into evidence a portion of Prisinzano's deposition wherein plaintiff's attorney put the following question to Prisinzano: "Do you have an opinion, Doctor, as to why Keen's [plaintiff's] right os calcis was in the condition that it was when Dr. Horn commenced his care and treatment?" The portion which was read showed that Prisinzano claimed to have such an opinion, and that, when asked for it, he answered thusly: "Well, my opinion is that probably the cast was removed too soon. Probably it was removed before there was a good bony union, and the patient bore weight, which caused disturbance to the fracture." Prisinzano next stated during his deposition that "the only conclusion" he could come to was that the cast was removed too soon, and he answered "Yes" to the subsequent question whether that was his best opinion "as to why Keen had the problems with reference to his right os calcis that he had and has, as reflected in Dr. Horn's record."

On *voir dire*, prior to the court's last-mentioned ruling about the deposition, Edgar's attorney obtained from Prisinzano assertions that, when his deposition was taken, Prisinzano did not "know" anything about the care, treatment, and advice given to plaintiff by Edgar, or about plaintiff's activities while under Edgar's care, and that he did not "know" those things until he read Horn's report. Edgar's objection to the reading of Prisinzano's deposition was then made on the ground that "it is remote and speculative in the way the question is framed [in the deposition]."

Apart from the self-contradiction posed by Prisinzano's earlier testimony that he had read both Horn's and Edgar's records before the deposition, Edgar's objection was properly overruled. Prisinzano's claimed lack of knowledge about the Edgar episode went only to the weight of Prisinzano's opinion. (See, *Am-Cal Investment Co.* v. *Sharlyn Estates, Inc.* (1967) 255 Cal.App.2d 526, 544 [63 Cal.Rptr. 518]; *Sim* v. *Weeks* (1935) 7 Cal.App.2d 28, 39 [45 P.2d 350].)

Nor is there merit in Edgar's appellate contention that, because Horn's records were not in evidence at trial, there was no probative value in the opinion as to causation which Prisinzano expressed in his deposition. Edgar's argument ignores the fact that, at the deposition, Prisinzano's opinion was solicited not only with reference to plaintiff's problems "as reflected in Dr. Horn's record" but also—and first—in regard to plaintiff's

condition as *"it was* when Dr. Horn commenced his care and treatment. . . ." (Italics added.) Evidence of the latter condition was supplied at trial by plaintiff's testimony that, when he first went to Dr. Horn, his heel and ankle had swollen to the size of a small grapefruit and the pain was intense, and by Prisinzano's testimony—received without objection or limitation—that one of Dr. Horn's operations on plaintiff was to relieve pressure on the peroneal tendon. (See fn. 2, *supra*.)[4]

Consequently, there was substantial evidence from which the jury could reasonably have found that defendant Edgar violated the professional standard of care applicable to removing plaintiff's cast and allowing him to walk without it, and that such violation was a proximate cause of the swelling, peroneal pressure, and intense pain which plaintiff was suffering when he consulted Dr. Horn.

As to each defendant, the judgment is affirmed on the second, third, and fourth causes of action and reversed on the first cause of action.

Plaintiff will recover his costs on appeal.

Friedman, Acting P. J., and Roberts, J.,* concurred.

A petition for a rehearing was denied February 28, 1972.

---

[4]By lack of appropriate objection (*Benton* v. *Cravens, Dargan & Co.* (1961) 188 Cal.App.2d 637, 645 [10 Cal.Rptr. 740]), Edgar waived the absence of any showing that he was present or represented at the taking of Prisinzano's deposition or had due notice thereof (Code Civ. Proc., § 2016, subd. (d); cf. *Associates Discount Corp.* v. *Tobb Co.* (1966) 241 Cal.App.2d 541, 550-552 [50 Cal.Rptr. 738]). Nor does Edgar contend that the discovery statute itself (§ 2016, *supra*) rendered Prisinzano's deposition inadmissible as substantive evidence against Edgar. (Compare, *Ghezzi* v. *Holly* (1970) 22 Mich.App. 157 [177 N.W.2d 247].) Moreover, "[e]ven evidence which is legally inadmissible, whether objected to or not, if it is in the record is to be considered, if it is relevant, in favor of plaintiff on motion for non-suit." (*Cullen* v. *Spremo* (1956) 142 Cal.App.2d 225, 230 [298 P.2d 579]; see also *Estate of Callahan* (1967) 67 Cal.2d 609, 617 [63 Cal.Rptr. 277, 432 P.2d 965]; *Hanrahan-Wilcox Corp.* v. *Jenison M. Co.* (1937) 23 Cal.App.2d 642, 644 [73 P.2d 1241].)

*Assigned by the Chairman of the Judicial Council.