Filed 1/22/24  Simonyans v. Torbati CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RITA SIMONYANS, | B314013 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV46544) |
| v. | |
| KARMAN TORBATI, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Edward B. Moreton, Judge.  Affirmed.

SLC Law Group and Louis F. Teran for Plaintiff and Appellant.

Schmid & Voiles, Denise H. Greer and Patrick W. Mayer for Defendant and Respondent.

_____

One week after giving birth, appellant Rita Simonyans suffered a coronary artery dissection and heart attack. She sued her obstetrician, respondent Kamran Torbati, M.D., for medical malpractice. Torbati moved for summary judgment, arguing that he did not cause her injury. The trial court granted the motion and entered judgment for Torbati.

After independently reviewing the record, we conclude that there are no triable issues of material fact. Torbati showed with expert opinion supported by authenticated medical records that a sudden, spontaneous coronary dissection is not predictable or preventable, and is asymptomatic until it occurs. Simonyans did not refute this evidence, but attempted to present an expert opinion based on unauthenticated hospital records. The opinion based on hearsay has no evidentiary value, lacks foundation, and is speculative. We affirm.

## FACTS AND PROCEDURAL HISTORY
### Simonyans Gives Birth

The genesis of the case is undisputed. Simonyans first saw Torbati in 2017, when she sought fertility treatment at his clinic. After she became pregnant in 2018, she saw Torbati regularly.[1] At visits, her blood pressure and heart rate were measured.

It is undisputed that when Simonyans came to the hospital to give birth, she had a regular heart rate. At admission on October 6, her blood pressure was 113/61, with a heart rate of 68. The baby was born on October 7. Measurements taken that day show blood pressure of 91/46, 106/55, and 124/57, and a heart rate of 71, 64, and 62. On October 8, her blood pressure was 90/52, with a heart rate of 88. On October 11, she went to an

---

[1] All further date references are to the year 2018.

2

emergency room complaining of severe rectal pain; when released, her blood pressure was 139/78, with a heart rate of 97.

### Simonyans Suffers a Coronary Artery Dissection

It is undisputed that on October 15, Simonyans went to the hospital complaining of "**acute onset** of chest pain and shortness of breath." Cardiac surgery was performed to repair an "**acute** left main dissection." A discharge summary describes a "**spontaneous** coronary artery dissection"; myocardial infarction; acute pulmonary edema; acute ischemic cardiomyopathy; and acute respiratory failure.

### Simonyans Files Her Lawsuit

Simonyans filed suit for malpractice arising from Torbati's prenatal medical care. She alleges that during the final months of her pregnancy, and after giving birth, he failed to properly evaluate her complaints of elevated heart rate, chest pains, shortness of breath, fatigue, and other symptoms, informing her that the symptoms were normal and would go away after she gave birth. Simonyans claims she suffered a heart attack because his medical treatment fell below the standard of care. Torbati answered and denied the claims.

### Torbati's Motion for Summary Judgment

In a motion for summary judgment, Torbati argued that there is no triable issue of material fact whether his treatment of Simonyans caused her injury. Her discovery responses claim he "failed to diagnose and treat [her] health and physical condition during her pregnancy," which "could have avoided a heart attacked [*sic*] and open heart surgery she endured around one week after giving birth." However, the evidence shows she had a sudden and spontaneous arterial dissection that was not caused by Torbati's obstetric care during her pregnancy.

3

Cardiology expert Michael L. Chaikin submitted a declaration for Torbati. Dr. Chaikin reviewed Simonyans's medical records, which showed normal blood pressure measurements throughout her pregnancy, including when she gave birth on October 7 and upon discharge from the hospital the next day. None of the symptoms claimed in her pleading indicate an impending coronary artery dissection.

Dr. Chaikin wrote that Simonyans went to the emergency room on October 15. Authenticated medical records show she "was in her usual state of good health" when "she had sudden onset of severe chest pain and shortness of breath" after a pediatric appointment. Tests "showed a significant dissection in the left main coronary artery." Immediate surgery was performed, revealing an acute dissection of the artery. Hospital records describe a "**spontaneous** coronary artery dissection," myocardial infarction, acute ischemic cardiomyopathy, pulmonary edema, and hypoxic respiratory failure.

Dr. Chaikin declared, "[A] spontaneous coronary artery dissection is neither predictable nor preventable" and "there are no symptoms a patient would experience before the coronary artery dissection occurs. There is no testing of any type that could have been done that would have disclosed any issue or problem with the plaintiff's coronary arteries with respect to an upcoming spontaneous coronary dissection" that suddenly occurred on October 15. He opined that Torbati "did not cause or contribute" to Simonyans's injury or damage.

### Simonyans Opposes Torbati's Motion

In opposition to Torbati's motion, Simonyans declared that she first experienced a sudden onset of chest pain and shortness of breath on September 9, a month before giving birth. She was

4

evaluated at the hospital obstetrics unit. Afterward, Torbati "assured me that I was fine and that my symptoms were very normal." She was discharged without being evaluated or treated by a cardiologist.

Cardiologist Uri Elkayam submitted an expert declaration in support of Simonyans. He reviewed her medical records, including her hospital visit on September 9 when she had "sudden onset of shortness of breath that was worse when she tries to lie down." Torbati discharged her from the hospital without ordering X-rays, an EKG, or a CT scan, and without having her consult a cardiologist. Dr. Elkayam stated that when Simonyans went to the hospital on October 15 "with sudden onset of severe chest pain and shortness of breath," she had a significant dissection requiring surgical repair.

Dr. Elkayam concluded that it is reasonably probable Simonyans "suffered a coronary dissection for the first time on September 9." If Torbati had referred her to a cardiologist that day, "her coronary dissection could have been identified and treated," which "could have reduced the chance of a reoccurring coronary dissection, such as the one she suffered on October 15." Dr. Elkayam opined that the treatment she received from Torbati on September 9 was below the standard of care.

Simonyans's medical records for September 9 show she was seen at the hospital by a gynecologist. She complained of shortness of breath, especially while lying down, and heartburn. Her blood pressure was 115/80; pulse was 79. She had no fever and denied a history of cardiovascular issues. The doctor opined that her shortness of breath was "air hunger" arising from pregnancy. He discussed her case with Torbati and sent her home with emergency room warnings.

5

Based on Dr. Elkayam's declaration, Simonyans argued that her coronary dissection "was spontaneous but not entirely unpredictable nor unpreventable." Torbati failed to diagnose her first coronary dissection on September 9. Had he sent her to a cardiologist, her condition could have been identified and treated before it recurred on October 15. Simonyans argues that this raises a triable issue as to whether Torbati negligently failed to refer her to a cardiologist.

**Torbati's Rebuttal**

Torbati argued that Dr. Elkayam did not show that he caused Simonyans's October 2018 coronary dissection or heart attack. Instead, Dr. Elkayam offered only the possibility that some unidentified treatment might have "reduced the chance" of it, without acknowledging that Simonyans was diagnosed with an acute (sudden and spontaneous) coronary dissection in October, with no support for his conclusion that she suffered one in September. Dr. Elkayam does not describe what tests or treatment might have reduced the risk of a dissection.

Dr. Elkayam did not refute Dr. Chaikin's opinion that an acute coronary dissection cannot be predicted or prevented: Simonyans had no symptoms because there are no symptoms. No tests would have disclosed an upcoming spontaneous dissection. Simonyans created no triable issue that Torbati negligently caused her to suffer a coronary dissection. Absent a showing that Torbati was the legal cause of the injury, to a reasonable medical probability, a medical malpractice case cannot be established; a mere "possibility" is insufficient to establish a prima facie case.

**The Trial Court's Ruling**

The court granted summary judgment. Focusing on the causation element, the court credited the opinion of Dr. Chaikin,

6

who explained that Simonyans's heart attack on October 15 resulted from an acute, significant, sudden dissection of the coronary artery. A spontaneous dissection is not predictable or preventable, has no symptoms, and cannot be tested for before it occurs. The court cited Dr. Chaikin's opinion that nothing Torbati did or failed to do caused Simonyans's injury.

The court rejected the opinion of Dr. Elkayam, who "assumes Plaintiff suffered a coronary dissection on September 9, 2018, without any evidence to support it, rendering his opinion without evidentiary value." The court wrote, "None of Dr. Elkayam's opinions are supported by a description of the facts on which they are based on or the reasoning that leads to his conclusion." Further, he "resorts to speculation to argue that Defendant's delay in referring Plaintiff to a cardiologist caused her October coronary dissection." Dr. Elkayam did not create a triable issue as to whether Torbati caused Simonyans's injuries. The court entered judgment for Torbati.

### Simonyans's Motion for Reconsideration

Simonyans sought reconsideration, arguing that the court did not liberally construe Dr. Elkayam's declaration. His opinion, based on his experience and reading of Simonyans's medical history and symptoms on September 9, was not speculative.

In support of her argument, Simonyans offered a new declaration from Dr. Elkayam, who offered further explanations why her shortness of breath on September 9 signified heart failure, when followed five weeks later by a coronary dissection. Dr. Elkayam opined that an evaluation would have defined the cause of Simonyans's shortness of breath, "which was reasonably probable to have been a myocardial ischemia due to spontaneous coronary dissection." Though Torbati believed that Simonyans's

symptoms were associated with pregnancy, a cardiac event should have been excluded before she was discharged from the hospital on September 9, because it could have been treated with medication or implantation of a stent.

In opposition, Torbati argued that neither Simonyans's criticism of the court's reasoning nor Dr. Elkayam's supplemental declaration are grounds for reconsideration:  It is not new law or new evidence.  (Code Civ. Proc., § 1008.)  He still does not offer facts showing that a delay arising from the September incident caused Simonyans's October heart attack.

The court denied the motion for reconsideration.  First, it rejected Simonyans's argument that it misinterpreted the law.  Second, it rejected the supplemental declaration from Dr. Elkayam:  There is no explanation for Simonyans's failure to produce this evidence earlier and an expert cannot offer new opinions based on evidence that was previously available.

## DISCUSSION

### 1.  Appeal and Review

Summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The judgment is appealable.  (Code Civ. Proc., §§ 437c, subds. (c), (m), 904.1., subd. (a)(1).)

We independently examine the record to determine if triable issues of fact exist.  (*Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 64.)  Evidence presented in opposition to summary judgment is liberally construed.  (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  Declarations supporting or opposing summary judgment must be based on admissible evidence.  (Code Civ. Proc., § 437c, subd. (d);

8

*Larsen v. Johannes* (1970) 7 Cal.App.3d 491, 501 [a motion "cannot be defeated by statements of inadmissible evidence in the opposing affidavits"].)[2]

## 2. Ruling on Torbati's Written Objections

The trial court overruled Torbati's written objection that Dr. Elkayam relied upon unauthenticated hearsay. Torbati renews his objection on appeal. We review evidentiary rulings for an abuse of discretion. (*Shugart v. Regents of University of California* (2011) 199 Cal.App.4th 499, 505.)

Hospital and medical records are hearsay. They may qualify under the business records exception to the hearsay rule if properly authenticated. (*Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 742.) "[W]ithout testimony providing for authentication of such records, [a doctor's] declaration had no evidentiary basis. Consequently his expert medical opinion . . . had no evidentiary value" when offered in support of summary judgment. (*Ibid*.)

Torbati is correct that Simonyans's September 9 records are hearsay. Dr. Elkayam has no personal knowledge of Simonyans's medical treatment but must rely on her hospital

---

[2] In her reply brief, Simonyans argues, for the first time, that Torbati failed to present evidence related to the standard of care. Arguments cannot be raised for the first time in a reply brief. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 157–158.) In any event, the trial court sustained Torbati's objection that the standard of care is "irrelevant" because the only issue is causation. Simonyans's failure to challenge the court's relevancy ruling forfeits the claim. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534 [a party who wishes to challenge a trial court evidentiary ruling on summary judgment must assert it in the appellate court].)

records.  However, no custodian of records attested that the purported evidence was made in the regular course of business, at or near the time of the event, to its identity and mode of preparation, or its trustworthiness.  (Evid. Code, § 1271.)  As a result, Dr. Elkayam's opinion, based on hospital records not properly before the court, has no evidentiary support.  (*Garibay v. Hemmat, supra,* 161 Cal.App.4th at p. 743.)

3.     **Ruling on Motion for Reconsideration**

In her motion for reconsideration after the trial court granted Torbati's motion for summary judgment, Simonyans presented another declaration from Dr. Elkayam.  In it, he embroidered upon his opinion that her shortness of breath on September 9 "is characteristic of heart failure."  For the first time, he suggested that she could have been treated with medication or implantation of a stent.

The trial court denied reconsideration.  It rejected the new declaration, finding it inadmissible because Simonyans gave no explanation why the evidence was not produced at the original hearing.  (*Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1339; *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.)  An expert declaration purporting to reach opinions based on evidence that was previously available is not "new" evidence.  (*Shiffer v. CBS Corp.* (2015) 240 Cal.App.4th 246, 254–256.)  The standard for reviewing a denial of reconsideration is abuse of discretion.  (*Id.* at p. 255.)[3]

---

[3] An order denying reconsideration is not separately appealable; however, if the underlying order is subject to review, denial of reconsideration may also be reviewed.  (Code Civ. Proc., § 1008, subd. (g).)

10

Although the ruling on reconsideration may be reviewed on appeal from the summary judgment ruling, Simonyans offers no argument or case authority showing that the trial court abused its discretion, thereby forfeiting any claim that it should have permitted Dr. Elkayam's new declaration.  Because the trial court rejected the new declaration and Simonyans has not shown abuse of discretion, we cannot deem it admissible on appeal.  Further, the new declaration lacks evidentiary value because it is based upon hearsay—the unauthenticated September 9 hospital records—as discussed in part 2 of this opinion, *ante*.

4.    **Causation in a Medical Malpractice Claim**

"[I]n any medical malpractice action, the plaintiff must establish:  '(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.' "  (*Gami v. Mullikin Medical Center* (1993) 18 Cal.App.4th 870, 877.)  Summary judgment is appropriate if the defendant "has conclusively negated a necessary element of the plaintiff's case."  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

At issue here is the element of causation, which " 'must be proven within a reasonable medical probability based upon competent expert testimony.  Mere possibility alone is insufficient to establish a prima facie case.  [Citations.]  . . . There can be many possible "causes," indeed, an indefinite number of circumstances which can produce an injury or disease.  A possible cause only becomes "probable" when, in the absence of other reasonable causation explanations, it becomes more likely

11

than not that the injury was a result of its action.  This is the outer limit of inference upon which an issue may be submitted to the jury.' " (*Dumas v. Cooney* (1991) 235 Cal.App.3d 1593, 1603 (*Dumas*).)

When a plaintiff complains of failure to diagnose, causation requires " 'expert testimony that if proper treatment had been given, better results would have followed.' " (*Dumas, supra,* 235 Cal.App.3d at p. 1603; see, e.g., *Burford v. Baker* (1942) 53 Cal.App.2d 301, 305–306 [failure to diagnose a hip injury caused a bone deformity that could have been avoided with prompt treatment]; *Keen v. Prisinzano* (1972) 23 Cal.App.3d 275, 281 [plaintiff showed a negligent X-ray reading caused more residual disability than would have occurred with proper diagnosis].)

A plaintiff must present evidence that further medical workup or tests would have produced a different result.  "Absent such evidence, there is no causal link between any negligence by [the doctor] and any injury to plaintiff." (*Flores v. Liu* (2021) 60 Cal.App.5th 278, 301.)  Sufficient evidence must allow an inference that in the absence of the defendant's negligence there is a reasonable medical probability that plaintiff would have obtained a better result.  An expert opinion that tests *might* have helped is speculation, not substantial evidence.  (*Ibid.*)

5.    **Causation in this Case**

Torbati carried his burden on summary judgment by making an initial showing that he did not do anything to cause injury to Simonyans.  Simonyans does not dispute that her heart attack on October 15 was "the result of an acute, significant sudden dissection of the left main coronary artery and circumflex coronary artery."  It is undisputed that an emergency room physician noted "**acute onset** of chest pain and shortness of

12

breath" after Simonyans "**suddenly started having left-sided severe chest pain** . . . shortness of breath and altered mental status, being drowsy and lethargic." It is undisputed that a cardiologist wrote that Simonyans "was in her usual state of good health on October 15, 2018 when she had a 'sudden onset of severe chest pain and shortness of breath.'" It is undisputed that a surgeon wrote that Simonyans "experienced an **acute** left main dissection extending into the circumflex and left anterior descending (artery)." Finally, it is undisputed that Simonyans "experienced a **spontaneous** coronary artery dissection."

Torbati's expert Dr. Chaikin opined that the obstetrician could not prevent a "sudden" and "spontaneous" coronary artery dissection, which is asymptomatic until it actually occurs. No tests that Torbati could have ordered would disclose an upcoming spontaneous dissection. This evidence met Torbati's burden of showing that he did not cause injury: Nothing he could have done would have produced a better result for Simonyans.

The burden shifted to Simonyans to present admissible expert testimony that Torbati failed to diagnose her coronary ailment or refer her to a cardiologist for evaluation, and had he done so, a better result would have followed. Simonyans failed to make an adequate showing in this case.

Simonyans's expert did not refute Dr. Chaikin's statement that a spontaneous coronary artery dissection is not predictable or preventable. Instead, Dr. Elkayam opined that Simonyans suffered two coronary artery dissections, one on September 9 (when she had shortness of breath in her eighth month of pregnancy) and one on October 15 (a week after she gave birth). Dr. Elkayam suggested that a cardiologist could have treated

13

Simonyans on September 9 if, in fact, a coronary dissection occurred on that date.

As discussed above in part 2, Dr. Elkayam's opinion relies on Simonyans's unauthenticated hospital records from September 9. His opinion is based on hearsay and has no evidentiary value.

In any event, the unauthenticated records do not bear out Dr. Elkayam's hypothesis of a September coronary artery dissection. His opinion that shortness of breath showed a coronary artery dissection is speculative. Simonyans was released on September 9 and did not return with heart problems until October 15, after giving birth. Her blood pressure and heart rate throughout her pregnancy, including at delivery, gave no indication that a coronary event was underway. She gave birth and was discharged from the hospital without complications.

Dr. Elkayam offers no "reasoned explanation" how Simonyans could survive a coronary artery dissection in September and thrive in "her usual state of good health" for another five weeks—despite the stress of labor and delivery—with no symptoms of heart failure or coronary disease. A medical expert opposing summary judgment must provide a reasoned explanation illuminating facts making it more probable than not that a negligent act was cause-in-fact of plaintiff's injury. (*Fernandez v. Alexander* (2019) 31 Cal.App.5th 770, 781.) Dr. Elkayam's initial declaration offers no explanation of what kind of treatment in September could have prevented Simonyans's spontaneous coronary dissection in October.

Simonyans ignores the deficiencies in Dr. Elkayam's initial declaration; she relies on his later declaration from her motion for reconsideration. As discussed in part 3, *ante,* we cannot

14

consider Dr. Elkayam's second declaration after the trial court rejected it under Code of Civil Procedure section 1008. Moreover, the new declaration continues to rely on unauthenticated hospital records. Simonyans did not establish the existence of a triable issue of fact with admissible evidence.

## DISPOSITION

The judgment is affirmed. Torbati is entitled to his costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



ASHMANN-GERST, J.



CHAVEZ, J.

15