[Civ. No. 7932.   Fourth Dist., Div. One.   Feb. 25, 1966.]

JOHN E. ARMSTRONG, Plaintiff and Respondent, v.
FRANK SVOBODA, M.D., Defendant and Appellant.

McInnis, Focht, & Fitzgerald and John W. McInnis for Defendant and Appellant.

Harney, Ford & Schlottman, David M. Harney and Robert E. Ford for Plaintiff and Respondent.

CONLEY, J.*—The plaintiff sued the defendant doctor for malpractice, claiming permanent injuries by reason of negligence in the treatment of his heart condition. The jury's verdict was for the defendant. But plaintiff's motion for a new trial was granted on the ground of the insufficiency of the evidence to justify the verdict and the defendant appealed.

Under our system, the final check on a jury's findings of fact, when there is a substantial conflict of evidence, is committed to the trial judge. In a homely phrase, which is accurate in connotation, it is often said that it is his duty on motion for a new trial to act as a thirteenth juror. (*Smith* v. *City of Long Beach,* 150 Cal.App.2d 720, 723 [310 P.2d 470]; *Grover* v. *Sharp & Fellows etc. Co.,* 66 Cal.App.2d 736, 737-738 [153 P.2d 83].) Once a case has passed this stage, there is no recourse to a losing party for a factual reassessment of contradictory proof; for an appellate court cannot reweigh the evidence received at the trial and is powerless to reverse a judgment if there was a substantial conflict of testimony. It is for this reason that it is not only the right, but the duty, of a trial judge to give close attention to the evidence and to grant a new trial if he concludes that the jury was wrong factually. (*Green* v. *Soule,* 145 Cal. 96, 102-103 [78 P. 337]; 36 Cal.Jur. 2d, New Trial, § 5, p. 132, New Trial, § 96, pp. 278-281.) It is also the reason why appellate courts are extremely loath to interfere with a decision of the court below that a new trial should be granted on the facts. (36 Cal.Jur.2d, New Trial, § 97, pp. 281-283.)

On this appeal, the defendant doctor contends that there was a total absence of evidence which could have supported a verdict for the plaintiff, and that, therefore, there was no basis for granting a new trial. In considering the record, this court can do no more than decide whether there was substantial evidence, which, if believed and adopted by the jury, would have supported a finding for the plaintiff, and

---

*Assigned by the Chairman of the Judicial Council.

which, consequently, now adequately supports the trial court in granting the new trial. ██ It is our duty, in such circumstances, to consider as true for the purpose, all evidence, including legitimate inferences, which favors the plaintiff. Needless to say, in adopting this necessary process we are not holding in advance that the judgment upon a retrial should be in favor of either party. We are directing our attention to one thing, and one thing only, namely, whether there was substantial evidence, which, if believed by the finders of fact, would have legally supported and upheld a verdict if it had been rendered in favor of the plaintiff. (*Pemberton* v. *Barber,* 199 Cal.App.2d 534, 537-538 [18 Cal.Rptr. 784] ; *Hawk* v. *City of Newport Beach,* 46 Cal.2d 213, 219 [293 P.2d 48] ; *Kalfus* v. *Fraze,* 126 Cal.App.2d 99 [971 P.2d 573].)

The defendant, Frank Svoboda, is a medical graduate of Creighton University. He specializes in internal medicine, but is not a diplomat of the American Board of Internal Medicine. He has known the plaintiff, John E. Armstrong, for approximately 30 years. Armstrong was a dentist, now said to be incapacitated by reason of his heart condition.

██ Dr. Svoboda first saw him professionally in July of 1960 for blurred vision. The initial contact between them relative to plaintiff's heart took place on November 22, 1960. About three days before that, Dr. Armstrong had been alarmed by precordial pains, and he consulted Dr. Svoboda for advice and suggested that an electrocardiogram be taken. This mechanical record was prepared by Dr. Svoboda, who testified that he found nothing irregular about it except that there were inverted ''T'' waves shown on the tracing, which could have been caused, according to Dr. Svoboda, by excessive exertion, low potassium in the body, or a head injury. There were, however, abnormalities in the ''T'' waves, which could have resulted from a pathological heart condition. The doctor did not tell the patient about the irregularity, or send him to the hospital, or even warn him that he should rest completely from his professional work; he suggested that there might be a stomach disorder and advised Dr. Armstrong not to drink alcoholic liquor and to resort to a bland diet.

On November 29, 1960, Dr. Armstrong was awakened at about 2 a.m. by intense precordial pain; following a telephone call, Dr. Svoboda went to the Armstrong residence; he did not at that time order the patient to the hospital or do anything except inject morphine in an attempt to control the pain. The morphine helped slightly, but the pain continued so badly that, in response to a call from Mrs. Armstrong, the defendant

returned to the Armstrong residence at about 9 o'clock in the morning and again did nothing toward a treatment except to give another injection of morphine and to suggest, according to Mrs. Armstrong, that she administer a high enema on the theory that he was affected by gas on the stomach and in the bowels. She was unable to effect this treatment, and Dr. Svoboda inferentially admitted on the stand that this advice, if it had been given, would have been improper and not required. The defendant was once more called at his office by telephone because the pain seemed to get worse rather than better; he again visited the patient at noon, but he did not prescribe hospitalization. At the close of office hours at about 5 p.m., the doctor once more saw his patient and for the first time, and then in response to the patient's suggestion, he ordered that he be placed in the Mercy Hospital. Instead of securing an ambulance, the defendant required Dr. Armstrong to walk down two internal flights of stairs, constituting about 35 steps, and then to descend 10 outside stairs; Armstrong was forced to walk approximately 150 feet to the automobile of the defendant where the doctor and his wife took him to the Mercy Hospital; he was placed under an oxygen mask, as well as given treatment for anticoagulation of the blood. At this point, the defendant called in Dr. Winston Conwell Hall, an experienced internist, to render aid. The patient's chart at the hospital shows, among other things, that at about this time he had suffered a thrombosis, which resulted in an infarction.

After prolonged treatment in the hospital, the plaintiff was returned to his home in Los Angeles under the sole care of defendant. Again, there was an extended delay by the doctor in treating the patient properly while he was at his home, so that when Dr. Armstrong was finally sent back to the hospital for a second time there had been a marked decompensation of the heart notwithstanding a long series of indications that he was in sorry condition, and that he needed hospital attention. Upon his removal to the hospital, Dr. Svoboda was definitely replaced for all purposes by Dr. Hall. The patient ultimately required an open-heart operation by Dr. Frank Gerbode and assistants at the Presbyterian Hospital in San Francisco to excise an aneurysm of the heart.

It was established without question that, in the event of an acute threat, or the actual onset, of a serious heart condition, it is required by the standard of care in the community to place the victim immediately in a hospital for the purpose of eliminating excessive exertion on his part and to give him

anticoagulants, and when necessary, oxygen, as well as other painstaking and timely care.

There was evidence that the defendant admitted that plaintiff suffered a heart attack on November 22, 1960, in a report which he made to the Department of Health, Education and Welfare. He also testified on the witness stand that such was the fact; however, after a recess, he retracted the admission which he had made on the stand. There is evidence, also, including the patient's hospital chart, that on the date of his first admission to the hospital late in the afternoon of November 29, 1960, the defendant conceded that plaintiff's heart condition as it then appeared related to his condition on November 22, 1960. On the former date, although plaintiff had abnormal ''T'' waves, defendant, contrary to the community standard of care among physicians, represented to plaintiff that his heart was normal.

While added exertion is contraindicated and injurious to a heart patient of this kind, the plaintiff was required on November 29, to walk down from his bedroom some 35 steps inside his home besides 10 outside steps to defendant's car on his way to the hospital. It is a fair inference from the evidence that the symptoms exhibited by plaintiff required his hospitalization at least one week before it actually occurred, and that he was injured and damaged by the delay in treating him before he first entered Mercy Hospital. It is also a fair inference that when plaintiff went to the hospital for the second time, on February 23, 1961, his heart had been decompensating for several weeks leading to further injury and damage, which could have been in part avoided by proper and timely medical attention.

The evidence relating to the period November 22 to 29, 1960, including the admissions of the defendant (see *Sheffield* v. *Runner,* 163 Cal.App.2d 48 [328 P.2d 828]), leads to the inference that defendant knew of plaintiff's pathological condition, or in the exercise of due care should have known of it from facts which were apparent, considerably before the time he placed the plaintiff in the hospital and prescribed relevant treatment and that the standard of care of physicians in the community required earlier hospitalization than Dr. Armstrong received. There is ample expert testimony to the effect that prompt hospitalization would then have minimized heart damage. It is a reasonable deduction that plaintiff was not then hospitalized in timely fashion, and that he also suffered additional heart damage by reason of his delayed entry into the hospital on February 23, 1961.

The evidence was sufficient to support a verdict in favor of the plaintiff if the jury had so found. It was, therefore, proper for the trial judge, having his view of the evidence, to grant the motion for a new trial.

The order is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.