[Civ. No. 55881. Second Dist., Div. Four. Dec. 10, 1979.]

FLORENCE C. PULVERS,
Individually and as Administratrix, etc., et al.,
Plaintiffs and Appellants, v.
KAISER FOUNDATION HEALTH PLAN, INC., et al.,
Defendants and Appellants.

COUNSEL

Lillian Finan and Richard E. Hodge for Plaintiffs and Appellants.

Thelen, Marrin, Johnson & Bridges, Curtis A. Cole and Michael T. Hornak for Defendants and Appellants.

OPINION

**KINGSLEY, Acting P. J.**—Originally, Mr. Pulvers brought suit against the Kaiser Health Plan and its related agencies and Dr. Lee, for mal-

practice in the treatment of a condition known as Bowen's disease. Mr. Pulvers died during the pleading stages of that case and it was thereafter continued by his widow as administratrix and in her individual capacity. Ultimately, in the fourth amended complaint, there were added causes of action for breach of warranty (second cause), fraud (third cause), wrongful death (fourth cause) and fraud (fifth cause). In addition, Mr. Pulvers' two children sued separately for wrongful death. The two actions were consolidated.

The jury returned a verdict for defendants on the first cause of action and for plaintiffs on the fourth cause of action. The trial court granted judgment on the pleadings on the second cause of action, a nonsuit on the third, and a new trial on the fourth and fifth.

## I

Although plaintiffs here attack the verdict and judgment on the first cause of action, we reject that attack. The evidence was sharply conflicting on the basic issue—did defendant, Dr. Lee, fail to conform to acceptable medical standards by delaying a biopsy in her diagnosis of Mr. Pulvers' condition. The jury was entitled to accept the defense testimony that her conduct was within approved medical standards. It is not our function to reweigh the evidence on that cause of action.

## II

It was plaintiff's theory in pleading the second cause of action that, by representing in their literature that they would provide "high standards" of medical service, they had warranted a standard higher than nonnegligence. They thus rely on our language in *Depenbrok* v. *Kaiser Foundation Health Plan, Inc.* (1978) 79 Cal.App.3d 167 at p. 171 [144 Cal.Rptr. 724], reading as follows: "We conclude that, if a plaintiff can prove to a properly instructed jury that a surgeon has clearly promised a particular result (as distinguished from a mere generalized statement that the result will be good), [fn. 2 omitted] and that the patient consented to an operation or other procedure in reliance on that promise, there can be recovery on the theory of warranty (or, to give the theory its more accurate name, breach of contract)." That reliance is misplaced. In *Depenbrok* we went no further than to hold that a doctor may be held liable on a theory of breach of contract where he

has clearly and unequivocally warranted that a course of treatment recommended by him will, inevitably, produce a certain result. In that opinion, we distinguished the cases, rejecting a contract theory, where the doctor had made what we characterize as only "generalized" promises of a "good result." We cannot see in the language here relied on by plaintiffs anything more than a similar generalized puffing to the effect that the foundation's doctors would exercise good judgment in their care.

## III

■ The third cause of action (and related allegations in the other causes of action) rest on the theory that, because the health plan represented itself to be a "nonprofit" organization, and in fact had a system whereby the individual doctors were encouraged, by an incentive payment plan, to be conservative with reference to unnecessary tests and treatments, Mr. Pulvers and his wife were fraudulently led to believe that they would receive "the best quality" of care and treatment.

As defendants point out, the health plan itself is nonprofit; as we understand it, the gravamen of plaintiffs' complaint is that, although admittedly, the individual doctors acted "for profit" they had believed that that profit was measured solely by a flat salary and did not include extra compensation for rendering less expensive care and treatment that ultra caution might suggest. We note, as defendants point out, that the use of such "incentive" plans is not only recommended by professional organizations as a means of reducing unnecessarily high medical costs, but that they are specifically required by. section 300e of the Health Maintenance Organization Act of 1973 (42 U.S.C. § 300e). We can see in the plan no suggestion that individual doctors act negligently or that they refrain from recommending whatever diagnostic procedures or treatments the accepted standards of their profession require.

## IV

■ With reference to the fourth cause of action for wrongful death, the trial court gave, at plaintiffs' request, the following instruction:

"PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 3

"Liability for negligence in providing medical care may be based upon an inference that it is a reasonable medical probability that the

decedent would have been benefited, . . . by possible lengthening of his life . . . even if no cure would have resulted from more prompt diagnosis and treatment." The jury brought in a verdict for plaintiffs; the trial court thereafter granted a new trial on the sole ground that that instruction was erroneous as a matter of law. The instruction (with a deletion which we discuss later) is based squarely on the language in *Cullum* v. *Seifer* (1969) 1 Cal.App.3d 20, at p. 28 [81 Cal.Rptr. 381]. It is here attacked on two grounds: (1) that the use of the word "liability" removed from the jury's consideration the issue of negligence and imposed an absolute liability; and (2) that *Cullum* is distinguishable because it was an action for personal injury and not, as here, one for wrongful death. We reject both arguments.

(1) The jury was carefully instructed, at length, on the definition of negligence in a malpractice case.[1] The instruction followed that elaborate definition and did no more than to tell the jury that "liability for *negligence*" could be found under the circumstances set forth. We cannot accept defendants' theory that a reasonable jury would have construed the instruction as negating all of the earlier instructions. The obvious meaning of the language used told the jury that, *if* they found negligence they could find causation from the inference set forth in the rest of the instruction.

(2) It is true, as the defendants argue, that the *damages* in a wrongful death case are different from those in a personal injury action. That distinction was recognized by the court's deletion from the *Cullum* language of the phrase "and/or his personal comfort."[2] The jury was elsewhere properly instructed as to the factors that it could consider in fixing damages. Of the three elements required in a malpractice suit—negligence, causation and damage—the instruction here involved dealt with only the second—causation—it did not foreclose, and could not reasonably be construed as affecting, the jury's obligation to also make findings favorable to plaintiffs on the other two elements, on both of which they were fully instructed.[3] The giving of the instruction, as amended by the trial court, was not error.

---

[1] The trial court gave BAJI Nos. 2.60, 6.00, 6.01, 6.02 and 6.03.

[2] Thus we reject plaintiffs' argument that there was error in deleting those words from the instruction as requested by them.

[3] The trial court gave BAJI No. 1.01, that the instructions should be considered as a whole.

## V

The order granting the new trial on the fourth cause of action, referred only to Mrs. Pulvers as administratrix and individually; it did not refer to the action by the two children. Since we reverse the new trial order, we need not, and do not, consider the effect of that—admittedly clerical—error.

## VI

■ Defendants moved both for a new trial and in the alternative, for judgment notwithstanding the verdict on the wrongful death cause of action. By their cross-appeal, they here attack the denial of the judgment notwithstanding the verdict. We reject that attack. Mr. Pulvers was afflicted with a form of leukemia known as "CLL," the principal effect of which is to render the body substantially less immune to infection. He ultimately died in 1973 from an infection. His condition was known to defendants as early as 1969. The attending physicians recommenced a course of periodic review, postponing chemotheraphy until his symptoms substantially worsened. The evidence was sharply conflicting on whether the monitoring was properly carried out, on whether chemotherapy should have been started at a much earlier time, and whether, had that treatment been given earlier, Mr. Pulvers' life would have been extended. We cannot say that the trial court erred in finding, as it did, that the evidence for plaintiffs on those issues, accepted by the jury in its verdict, supported that verdict. As with plaintiffs' attack on the verdict adverse to them on the first cause of action, we have no power to reweigh the evidence which, as to the fourth cause of action, was regarded by jury and trial court as sufficient.

The order granting a new trial is reversed; the order denying judgment notwithstanding the verdict is affirmed; the judgment on counts I, II and III is affirmed. Neither party shall recover costs in this court.

Jefferson (Bernard), J., and Swearinger, J.,* concurred.

Petitions for a rehearing were denied December 26, 1979, and the petitions of all the parties for a hearing by the Supreme Court were denied February 7, 1980.

---

*Assigned by the Chairperson of the Judicial Council.